James E. Cecchi
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*(Additional Counsel on the Signature Page)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CANDLE SHOPPE OF THE POCONOS, INC., on behalf of itself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GIVAUDAN S.A.; GIVAUDAN FRAGRANCES CORPORATION; GIVAUDAN FLAVORS CORPORATION; UNGERER & COMPANY, INC.; INTERNATIONAL FLAVORS & FRAGRANCES INC.; SYMRISE AG; SYMRISE INC.; SYMRISE US LLC; FIRMENICH INTERNATIONAL S.A.; FIRMENICH INCORPORATED; and AGILEX FLAVORS & FRAGRANCES, INC.,<br><br>*Defendants.* | Civil Action No.<br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Candle Shoppe of the Poconos, Inc. ("Plaintiff") brings this action on behalf of itself and on behalf of the Class defined herein against Defendants Givaudan S.A.; Givaudan Fragrances Corporation; Givaudan Flavors Corporation; Ungerer & Company, Inc.; International

Flavors & Fragrances Inc.; Symrise AG; Symrise Inc.; Symrise US LLC; Firmenich International S.A.; Firmenich Incorporated; and Agilex Flavors & Fragrances, Inc. (collectively, "Defendants") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## NATURE OF THE ACTION

1.     On March 7, 2023, the European press reported unannounced inspections, dawn raids and formal requests for documents sent to the four global giants in the global fragrance industry, as well as a global industry association, related to a global investigation of price fixing, market allocation, and agreeing to limit supply.

2.     The announcement of the global investigation was made by the Swiss Competition Commission known as COMCO based in Bern, Switzerland.

3.     The investigation appears to be led by the European Commission's antitrust authority, which is reported to have carried out the raids in conjunction with the U.S. Department of Justice Antitrust Division; the UK Competition and Markets Authority; the Swiss Competition Commission COMCO; and the competition authorities of the EU Member States where the inspections were carried out, which would add the competition authority in France.

4.     The Swiss authority stated there were suspicions that the targeted companies "have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances."

5.     Fragrances are used in a long line of products, including perfumes, cosmetics, shampoos, conditioners, detergents, toothpaste, soaps, body wash, shaving gel, aftershave, household cleaners, candles, dryer sheets, fabric softeners, other personal care products, and food

products.  The primary customers for Fragrance Products are manufacturers of these consumer goods.

6.      The fragrance industry involves many billions of dollars of commerce.  In the United States alone, which accounts for approximately 25% of Fragrance Industry revenue, 2023 revenue in the Fragrances segment is projected to be $8.71 billion.

7.      Firmenich reported revenues of $2.5 billion (2.4 billion Swiss francs) in the first six months of the 2022-2023 fiscal year.  Givaudan reported annual sales of 7 billion Swiss francs. International Flavors & Fragrances reported revenues of $12.4 billion in 2022.  Symrise posted sales of 4.6 billion euros in 2022.

8.      Defendants are the world's largest suppliers of fragrance compounds, ingredients, and miscellaneous fragrance-related ingredients ("Fragrance Products").  They are the giants of the fragrance industry, which industry is closely aligned with the flavors, aroma chemicals, and cosmetic ingredients sectors.  All four industry giants compete in all the related sectors. Defendants' collective market share of the fragrance compound market is in the 60 to 70% range. Defendants have solidified their dominance by embarking on joint ventures and acquiring competitors.

9.      The only other major manufacturers of fragrances, thus far not named in the global investigation, are Robertet SA headquartered in Grasse Cedex, France; Takasago International Corporation based in Tokyo; and BASF headquartered in Ludwigshafen, Germany.

10.     Plaintiff and the members of the putative Class are consumer goods manufacturers. They directly purchase Fragrance Products from Defendants to lend fragrances to the consumer goods Plaintiff and Class members produce.

## JURISDICTION AND VENUE

11.     Plaintiff brings this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §
§ 15(a) and 26, to secure injunctive relief and to recover actual and compensatory damages, treble
damages, interest, costs, and attorneys' fees for the injury caused by Defendants' wrongful conduct
against Defendants for violating the Sherman Act, 15 U.S.C. § 1.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§
1331 and 1337(a) and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. This Court
also has jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy for each Class
exceeds $5,000,000 and there are members of each Class which citizens of a different State than
Defendants.

13.     Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton
Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1391(b), (c), and (d). One or more Defendants resided,
transacted business, were found, had agents in, or engaged in substantial activity in this District,
and a substantial portion of the affected interstate trade and commerce described in this Complaint
was carried out in this District.

14.     This Court also has personal jurisdiction over each Defendant because, *inter alia*,
each Defendant: (a) transacted business throughout the United States, including in this District; (b)
manufactured, sold, shipped, and/or delivered substantial quantities of Fragrance Products
throughout the United States, including in this District; (c) had substantial contacts with the United
States, including in this District; and/or (d) engaged in an antitrust conspiracy that was directed at
and had a direct, foreseeable, and intended effect of causing injury to the business or property of
persons residing in, located in, or doing business throughout the United States, including in this
District.

15.     The activities of Defendants, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the United States.

## PARTIES

### A.     Plaintiff

16.     Plaintiff Candle Shoppe of the Poconos, Inc. is a Pennsylvania corporation with its principal place of business located in Tannersville, Pennsylvania.   Plaintiff has purchased Fragrance Products as defined herein from one of the Defendants at a supra-competitive price and suffered antitrust injury and damages as a material, direct, and proximate result of Defendants' conspiracy and overt acts in furtherance thereof.

### B.     Defendants

17.     Defendant Givaudan S.A. is headquartered in Vernier, Switzerland, with its offices located at Chemin de la Parfumerie 5, 1214 Vernier, Switzerland.   Givaudan S.A. is a corporation organized and existing under the laws of Switzerland. Givaudin S.A. transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.   Givaudan S.A. and its U.S. subsidiaries have operations, offices, plants and facilities located in East Hanover, NJ; Middlesex, NJ; South Hackensack, NJ; Mount Olive, NJ; East Hanover, NJ; Towaco, NJ; Lincoln Park, NJ; and Somerset, NJ, as well as other locations in Illinois, Ohio, Kentucky, Florida, Nebraska, California, Massachusetts, Minnesota, New York, Pennsylvania and Wisconsin.

18.     Defendant Givaudan Fragrances Corporation is a subsidiary of Givaudan S.A., headquartered in East Hanover, New Jersey, with offices located at 717 Ridgefield Avenue, East Hanover, New Jersey 07936.   Givaudan Fragrances Corporation is a corporation organized and

existing under the laws of the State of Delaware. Givaudan Fragrances Corporation transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

19.     Defendant Givaudan Flavors Corporation is a subsidiary of Givaudan S.A., headquartered in East Hanover, New Jersey with offices located at 245 Merry Lane, East Hanover, New Jersey 07936.  Givaudan Flavours Corporation is a corporation organized and existing under the laws of the State of Delaware. Givaudan Flavours Corporation transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

20.     Defendant Ungerer & Company, Inc. ("Ungerer") is a subsidiary of Givaudan, S.A. and is headquartered in Lincoln Park New Jersey with its offices located at 4 Ungerer Way, Lincoln, Park, NJ 07035.  Ungerer is a corporation organized and existing under the laws of the State of Delaware.  Ungerer transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

21.     Defendants Givaudan S.A., Givaudan Fragrances Corporation, Givaudan Flavors Corporation and Ungerer are herein collectively referred to as "Givaudan."

22.     Defendant International Flavors & Fragrances, Inc. ("IFFI") is headquartered in New York, New York, with its offices located at 521 West 57th Street, New York New York 10019. IFFI is corporation organized and existing under the laws of the State of New York. IFFI has offices for the conduct of its business within this District at 600 NJ-36, Hazlet, New Jersey 07730, and transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.  IFFI and its subsidiaries have operations, offices, plants and facilities located in multiple addresses in Branchburg, NJ; Ridgefield, NJ; Hazlet, NJ;

Holmdel Township, NJ; Union Beach, NJ; Brunswick Township, NJ; and Ewing, NJ, as well as locations in Louisiana, West Virginia, Georgia, Ohio, Wisconsin, Texas, Illinois, Iowa, Delaware, Maine, Connecticut, California, Kansas, New York, Missouri, Indiana, North Carolina, Pennsylvania, Florida, Maryland, Nevada, Alabama, Tennessee, Michigan, Massachusetts, Oklahoma and Arkansas.

23.     Defendant Symrise AG is headquartered in Holzminden, Germany, with its offices located at Muehlenfeldstrasse 1, Corporate Communications, 37603 Holzminden, Germany. Symrise A.G. is a corporation organized and existing under the laws of Germany.  Symrise AG transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavor and fragrance products.  Symrise AG and its U.S. subsidiaries have operations, offices, plants and facilities located in Saddle Brook, NJ; Branchburg, NJ; Hasbrouck Heights, NJ; and Teterboro, NJ, as well as other locations in New York, Wisconsin, South Carolina, Oklahoma, Oregon, Florida, Georgia, Missouri, Ohio, Alabama, Minnesota, Mississippi, Iowa, Illinois, Texas, North Carolina and California.

24.     Defendant Symrise Inc. is a subsidiary of Symrise A.G., and is headquartered in Teterboro New Jersey, with offices locates at 300 North Street, Teterboro, New Jersey 07608. Symrise, Inc. is a corporation organized and existing under the laws of the State of Delaware. Symrise Inc. transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

25.     Defendant Symrise US LLC is a subsidiary of Symrise A.G., and is headquartered in Teterboro New Jersey, with offices located at 300 North Street, Teterboro, New Jersey 07608. Symrise US LLC. is a limited liability company organized and existing under the laws of the State of Delaware. Symrise US LLC transacts or has transacted business in this District, and is engaged

in the development, manufacture, and sale of flavors and fragrances.

26.     Defendants Symrise AG, Symrise Inc. and Symrise USD, LLC. are herein collectively referred to as "Symrise."

27.     Defendant Firmenich International S.A. is headquartered in Satigny, Switzerland with its offices located at Rue de la Bergere 7, Satigny CH-1242, Switzerland. Firmenich International S.A is a corporation organized and existing under the laws of Switzerland.  Firmenich International S.A. has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.  Firmenich International S.A. and its U.S. subsidiaries have operations, offices, plants, and facilities located in Newark, NJ; Sussex, NJ; Middlesex, NJ; Piscataway, NJ; and Somerset, NJ, as well as at other locations in New York, California, Minnesota, Florida, Missouri and Georgia.

28.     Defendant Firmenich Incorporated is a subsidiary of Firmenich International S.A., and is headquartered in Plainsboro, New Jersey, with offices located at 250 Plainsboro Road Plainsboro, NJ 08536. Firmenich Incorporated is a corporation organized and existing under the laws of the State of Delaware.  Firmenich Incorporated transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

29.     Defendant Agilex Flavors & Fragrances, Inc. ("Agilex") is a subsidiary of Firmenich International, S.A. and is headquartered in Piscataway New Jersey, with its offices located at 140 Centennial Ave #100, Piscataway, NJ 08854.  Agilex is a corporation organized and existing under the laws of the State of Delaware.  Agilex transacts or has transacted business in this District, and is engaged in the development, manufacture, and sale of flavors and fragrances.

30.     Defendants Firmenich International, S.A., Firmenich Incorporated and Agilex are herein collectively referred to as "Firmenich."

## FACTUAL ALLEGATIONS

### A.     The Fragrance Industry

31.     Fragrance is an essential component of many of the consumer goods Plaintiff and Class members produce. Consumer goods manufacturers include fragrances in a variety of goods, such as soap, cleaning products, and cosmetics.

32.     Consumer goods manufacturers tend not to manufacture the fragrances they use in their products. Instead, they purchase Fragrance Products from fragrance manufacturers, including Defendants.

33.     For at least as long as the Class Period, the fragrance industry has been characterized by numerous factors that facilitated Defendants' conspiracy. By way of illustration and not limitation, the industry has exhibited (1) market concentration among a limited number of participants; (2) high barriers to entry; (3) mutual interchangeability of Defendants' products; (4) inelasticity of demand; (5) product commoditization and (6) ease of information sharing among Defendants.

34.     *Market Concentration.* The fragrance industry is a highly concentrated market where a small number of firms have operated and dominated the industry for a great number of years. The more highly concentrated a market is, the less competitive it is. When more than two companies, but still a small number, compete in, dominate and control a given market sector that all are influential players in the market, the market can be described as an oligopoly.

35.     This market structure gives Defendants a huge influence over price and other aspects of the market. Oligopolies develop in industries that require a large sum of money to start. Existing companies in oligopolies often have cost advantages as the result of mass production, volume discounts from suppliers, economies of scale and the cost of convincing customers to try

a new product.  Major barriers to competition include exclusive access to resources or patented processes, patents, actions of businesses in the oligopoly or government limits.

36.     The Defendants' combined market share is in the 60 to 70% range.

37.     The four Defendants have dominated the fragrance industry for over 100 years.

38.     Defendant Givaudan has its historical roots in Grasse, France in 1768 and was founded in 1895 in Zurich, Switzerland.  As of 2008, Givaudan became the world's largest company in the flavour and fragrance industries.  It is currently headquartered in Vernier, Switzerland and had revenues of 7.1 billion Swiss francs in 2022, of which 3.2 billion was from fragrance & beauty sales, and 166 locations worldwide.  50% of their 2022 sales were to multinational customers and 26% of sales were to customers in North America.

39.     The first of International Flavors & Fragrances Inc.'s parent companies, Polak & Schwartz, was established in 1889 in Zutphen, Netherlands, but IFF's corporate history dates back to 1833 in London.  The operations and headquarters were moved to the United States in New York 1935, and following the merger of the worldwide operations of Polak & Schwarz and van Ameringen-Haebler in 1958, the company was renamed International Flavors & Fragrances Inc. International Flavors & Fragrances has been publicly traded (NYSE: IFF) since 1964 and produces flavors, fragrances and cosmetic actives which are sold globally.  It had sales and manufacturing facilities in 44 countries, 24,600 employees in 2022 and $12.4 billion in revenue in 2022.  IFF reported having a 5-year annual growth rate of 29.63%.  IFF had 104 manufacturing facilities and 82 laboratory facilities in 2019.

40.     The origin of the two predecessor companies of Symrise date back as far as 1874 when founders Haarmann & Reimer established their first vanillin factory in Holzminden, Germany.  The predecessor Dragoco was founded in 1919, which became one of the world's

leading suppliers of fine perfume compositions, aroma chemicals and cosmetic raw materials. Symrise was formed by the merger of Haarmann & Reimer and Dragoco in 2003, which went public on the German Stock Exchange as the largest IPO of 2006.  Symrise has over 12,000 employees as of 2022 working at more than 100 facilities around the world, manufacturing 35,000 products for over 6,000 customers in more than 150 countries.

41.     Defendant Firmenich is the world's largest privately owned fragrance and taste company founded in Geneva, Switzerland in 1895.  It has been family-owned for 128 years. Firmenich is engaged in the research, creation, manufacture and sale of perfumes, flavors and ingredients sold to other businesses, including formulation of ingredients and proprietary technologies such as biotechnology.  Firmenich had sales of 4.9 billion Swiss francs for the calendar year ending December 31, 2022.  Firmenich has 83 affiliates, over 11,000 employees, manufactures 30,000 unique products, processes more than 200,000 purchase orders, operates 46 manufacturing plants and six research and development centers, and sells to customers located in more than 100 markets.  Firmenich delivered double-digit and record revenue growth in the first half of fiscal year 2023.

42.     Not surprisingly given the age of the main players in the industry, the fragrance industry is a mature one dominated by established corporations, each having multinational operations, global market reach, and diverse product portfolios and easy access to resources and capital.

43.     **High Barriers to Entry.**  Companies seeking to enter the fragrance industry confront various significant barriers to entry, including high input costs, plant costs, compliance with multiple regulatory regimes; access to critical ingredients and distribution networks; and investment in intellectual property and research and development.  Further, Defendants are to a

large extent vertically integrated.  New entrants to the industry are unable to rival Defendants'

ability to control multiple stages of fragrance production. Given these barriers, new entrants are

unlikely to be able to compete away supra-competitive cartel pricing.  Here, high barriers to entry

have prevented entry by sellers of Fragrance Products despite the artificial inflation of prices.

44.     Input costs are extremely high in this industry, which is a significant barrier to

entry.  In particular, the cost of acquiring the goods to be used in creating Fragrance Products can

be as high as 60% of a company's revenue.

45.     Research and development costs are also very high and a significant barrier to entry.

For example, Symrise's 2022 Research and Development spending exceeded 250 million Euros.

46.     Another obstacle for a potential new entrant to consider would be the costs involved

in running and operating a plant.  The plant value in this industry is equivalent to almost a third of

a company's total revenue.  This presents a significant start-up cost for any possible new entrant.

47.     ***Mutual Interchangeability of Products.***   Fragrance industry products are

interchangeable.   Thus, a specific fragrance industry product manufactured by one of the

Defendants can be exchanged for a product of another Defendant with the same specifications.

For example, during Givaudan's acquisition of Quest International in 2007, the EU Court noted

that "even though various fragrance compositions are often developed individually by

manufacturers in close co-operation with their customers, it is normally possible to get the same

or a very similar product from a new supplier."

48.     ***Inelasticity of Demand.***  Demand is inelastic for most fragrance industry products.

When there are few or no substitutes for a product, purchasers have little choice but to pay higher

prices in order to purchase these products.  Fragrance industry products are a fundamental and

necessary component in the end-products in which they are employed.  These products perform a

particular function that generally cannot be replicated through inclusion of substitute products. Thus, the demand for Fragrance Products is derived from the demand for consumer products downstream.  The more consumers demand perfumes, cosmetics, and household products, the higher the demand for Fragrance Products will be.  For example, in Givaudan's "Full Year Results 2022" presentation, Givaudan stated that it experienced a 10.2% increase in Fragrance Products' sales.  GDP rose 9.2% that year, suggesting a very close relationship between Fragrance Products' sales and GDP.

49.      ***Product Commoditization.*** Fragrance industry products are mass-produced through standardized manufacturing processes.  The products at the center of Defendants' conspiracy are largely commoditized.

50.      When a product is characterized as a commodity, market participants typically compete on the basis of price rather than other attributes such as product quality or customer service.  Where competition occurs principally on the basis of price, it is easier to implement and monitor a cartel because price is more often objectively measurable and observable than non-price factors such as service.

51.      ***Ease of Information Sharing.***  Because of their common membership in trade associations and interrelated business relationships between certain executives, officers, and employees of the Defendants, there were many opportunities both before and during the Class Period for Defendants to collude by discussing competitive information.  These trade associations and other business relationships make a market more susceptible to collusive behavior because they can provide a pretense under which conspirators can exchange sensitive company information such as pricing and market allocation.

52.      For example, Defendants are four of the seven "Regular Members" of the

International Fragrance Association ("IFRA") global representative body of the fragrance industry. The association represents the collective interests of the industry and promotes the safe use of fragrances through regulation.

53.    The IFRA is the official self-regulatory body of the fragrance industry worldwide. The organization publishes IFRA standards including ingredients that are prohibited as a fragrance ingredient, restricted or only allowed in prescribed quantities, and requiring accompanying specifications concerning their use.  The IFRA's main purpose is to ensure the safety of fragrance materials through a dedicated science program.  IFRA publishes a list of usage standards for fragrance materials, limiting or prohibiting the use of ingredients based on the findings of the Research Institute of Fragrance Materials, which gathers data about the safety of fragrance materials.

54.    The IFRA was founded in 1973 and has its head office located in Geneva, Switzerland and its operations center located in Brussels, Belgium.  The association works closely with the International Organization of the Flavor Industry (IOFI), where Defendants are also four of the eleven "Company Ordinary Members."

55.    Defendants are also members of the European Flavour Association founded in 1961 and based in Brussels, Belgium; the Research Institute for Fragrance Materials ("RIFM"); and the Fragrance Science & Advocacy Council ("FSAC"), of which Defendants are founding members. When they launched FSAC, Defendants terminated their membership in the Fragrance Creators Association ("FCA"), a trade association that has increasingly committed to responsible industry stewardship in recent years.

**B.    Defendants' Conspiracy**

56.    Over the past 15 years, the prices of Fragrance Products have been incredibly

14

volatile.

57.     Prices were declining from 2016 to 2018 just before the Class Period.

58.     From 2018 to 2021, prices remained steady.

59.     In late 2021/early 2022, prices abruptly increased substantially.

60.     Defendants initiated the price fixing conspiracy to protect their earnings in the face of the rising cost of raw materials.  Defendants were successful in first stabilizing and then increasing prices.

61.     Defendants' representatives publicly acknowledged their success.

62.     On August 5, 2019, IFF reported in its second quarter results that its Scent Business Unit "profit increased 13% on a reported basis and 19% on a currently neutral basis reflecting cost and productivity initiatives, along with more favorable price to input costs." .

63.     As recently as January 25, 2023, Givaudan's Chief Financial Officer explained that a margin decrease was "a result of the higher input costs, *partially compensated by price increases*."  Defendants' public statements also suggest they were aware of competitively sensitive information.

64.     On March 7, 2023, the European press reported unannounced inspections, dawn raids and formal requests for documents sent to the four global giants in the global fragrance industry, as well as a global industry association, related to a global investigation of price fixing, market allocation and agreeing to limit supply.

65.     The announcement of the global investigation was made by the Swiss Competition Commission known as COMCO based in Bern, Switzerland.

66.     The investigation appears to be led by the European Commission's antitrust authority, which is reported to have carried out the raids in conjunction with the U.S. Department

of Justice Antitrust Division, the UK Competition and Markets Authority, the Swiss Competition Commission COMCO and the competition authorities of the EU Member States where the inspections were carried out, which would add the competition authority in France.

67.     The Swiss authority stated there were suspicions that the targeted companies "have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances."

68.     All four industry giants acknowledged and confirmed by March 8, 2023 that they were under investigation and were cooperating with the various competition authorities.

**C.     Price Increases**

69.     In furtherance of their conspiracy, Firmenich, Gaudivan, IFFI, and Symrise have each implemented significant prices increases during the Class Period.

70.     Defendants at times reported their price increases within several weeks of one another.   For example, between August 14, 2018, and October 8, 2018, Symrise, IFF, and Givaudan all announced price increases.

71.     In October 2019, Givaudan stated that it was "continu[ing] to implement price increases" after its sales revenue rose helped by price increases.

72.     In January 2020, Givaudan said it was continuing to raise its prices as a result of increasing input costs.

73.     Similarly, Defendants announced price increases in 2022.

74.     On January 28, 2022, Reuters reported on Givaudan price increase efforts stating "[w]ith higher input costs in 2022, the company is implementing price increases in collaboration with its customers to fully compensate for the increases in input costs."

75.     On March 17, 2022, IFF announced that it was "implementing broad-based pricing

actions" and that "[t]he immediate need for these price increases is driven by continued and significant escalation of raw material, energy, and logistics costs as a result of the current geopolitical climate."

76.     On April 19, 2022, Global Cosmetic News reported that "Givaudan said that it will continue to implement price increases in collaboration with its customers to fully compensate for increases in input costs it is experiencing this year."

77.     On July 21, 2022, Reuters reported that Givaudan stated that "[p]rice increases are expected to accelerate in the second half."

78.     On August 2, 2002, Reuters reported that Symrise "seeks to counter soaring costs inflation with price hikes while demand for its products remain robust."

79.     Plaintiffs and members of the Class have purchased Fragrance Products from Defendants.  Because of Defendants' anticompetitive conduct, Plaintiffs and the Class members were forced to pay more for these products than they otherwise would have, and thus have suffered substantial overcharge damages at the hands of the Defendants.

80.     Defendants' unlawful conduct has successfully eliminated or suppressed competition in the market, and Plaintiffs and the Class members have sustained and continue to sustain, significant losses in the form of artificially inflated prices paid to Defendants.

81.     Defendants, through their unlawful conduct alleged herein, reduced competition in the fragrance market, increased prices, reduced choice for purchasers, and caused antitrust injury to purchasers in the form of overcharges.

82.     Defendants' anticompetitive conduct is ongoing.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this action on behalf of itself and as a class action under the

provisions of Rules 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of members of the following Plaintiff Class:

> All persons (including individuals, companies, or other entities that purchased Fragrance Products (including through controlled subsidiaries, agents, affiliates, or joint-ventures) directly from any of the Defendants, their subsidiaries, agents, affiliates or joint ventures from January 1, 2018, and continuing through the present (the "Class Period"), and such persons are: (a) inside the United States and were billed or invoiced for Fragrance Products within the United States (i.e. "billed to" persons within the United States); (b) or outside the United States and were billed or invoiced for Fragrance Products imported into the United States (i.e. where the products were "billed to" persons outside the United States but "shipped to" persons within the United States).  The United States includes all fifty states, its territories and the District of Columbia.

84.     Excluded from the Class are Defendants; their officers, directors, management, employees, parents, subsidiaries, affiliates, and coconspirators. Also excluded are any federal, state, or local governmental entities and their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions, any judicial officers presiding over this action and their spouses as well as their law clerks and their spouses.

85.     Members of the Class are so numerous and geographically dispersed that joinder is impracticable. Further, members of the Class are readily identifiable from information and records in Defendants' possession.

86.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class were damaged by the same wrongful conduct of Defendants.

87.     Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of members of the Class.

88.     Plaintiff is represented by counsel with experience in the prosecution and leadership of class action antitrust and other complex litigation.

89.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members, thereby making damages with respect to members of the Class as a whole appropriate. Questions of law and fact common to members of the Class include, but are not limited to:

a.     Whether Defendants combined and/or conspired to fix, raise, maintain, or stabilize prices of Fragrance Products to purchasers in the United States at any time during the Class Period;

b.     Whether Defendants concertedly fixed, raised, maintained or stabilized prices of Fragrance Products sold to purchasers in the United States at any time during the Class Period, or committed other conduct in furtherance of the conspiracy alleged herein;

c.     Whether the actions of Defendants in so conspiring violated Section 1 of the Sherman Act;

d.     Whether Defendants fraudulently concealed their conspiracy from purchasers in the United States;

e.     The scope and duration of the alleged conspiracy;

f.     Injury suffered by Plaintiff and members of the Class;

g.     Damages suffered by Plaintiff and members of the Class; and

h.     Whether Defendants have acted or refused to act on grounds generally applicable to members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to members of the Class as a whole.

90.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would

require.

91.     The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

92.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

93.     Plaintiff has defined members of the Class based on currently available information and hereby reserves the right to amend the definition of members of the Class, including, without limitation, the Class Period.

<b><u>EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT</u></b>

94.     Any applicable statute of limitations for Plaintiff and the Class has been tolled with respect to any claims and rights of action that Plaintiff and the Class have as a result of the unlawful combination and conspiracy alleged in this Complaint. Defendants are equitably estopped from asserting a statute of limitations defense by reason of Defendants' concealment of the conspiracy.

95.     Plaintiffs have had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein, despite their diligence in trying to discover such facts.  Plaintiffs and members of the Class could not have discovered through reasonable diligence the existence of the conspiracy alleged herein until in or about March 7, 2023, when European Commission dawn raids in conjunction with the United States Department of Justice Antitrust Division, the UK Competition and Markets Authority, the Swiss Competition Commission and competition authorities of various EU member states became public.

96.     Defendants engaged in a self-concealing conspiracy that did not give rise to facts

that would put Plaintiffs or the Class on inquiry notice that there was a conspiracy among Defendants.   Defendants also engaged in acts to conceal their conspiracy including secret communications and meetings.

97.     Defendants also gave pretextual justifications for the pricing changes and the reduction in output that occurred during the Class Period.

98.     Indeed, Defendants relied on a variety of market-based explanations for pricing changes and reductions in output in order to conceal the conspiracy.

<u>**COUNT I**</u>

**VIOLATION OF THE SHERMAN ACT**

**Conspiracy to Restrain Trade**
**in Violation of § 1 of the Sherman Act (15 U.S.C. § 1)**

99.     Plaintiff restates, re-alleges, and incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

100.     Beginning at a time currently unknown to Plaintiff, but at least as early as January 1, 2018 (further investigation and discovery may reveal an earlier date), and continuing through the present, the exact dates being unknown and exclusively within the knowledge of Defendants, Defendants entered into a continuing combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition for the pricing of Fragrance Products directly sold to United States purchasers.

101.     In particular, Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of Fragrance Products sold to United States purchasers during the Class Period.

102.     Among other things, to implement their conspiracy, the Defendants coordinated their pricing policy, agreed that certain Defendants would not supply particular customers and

agreed to limit production.

103.    This conspiracy is a *per se* violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

104.    Plaintiff and members of the Class directly purchased Fragrance Products at supra-competitive prices, suffering antitrust injury and damages as a material, direct, and proximate result of Defendants' conspiracy and overt acts in furtherance thereof.

105.    Plaintiff and members of the Class have been injured in their business and property by reason of Defendants' violation of Section 1 of the Sherman Act, within the meaning of Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

106.    Plaintiff and members of the Class are threatened with future injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act, within the meaning of Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

107.    Plaintiff and members of the Class are entitled to recover damages for the injury caused by Defendants' wrongful conduct and to an injunction against Defendants, preventing and restraining the violations alleged herein.

WHEREFORE, Plaintiff, on behalf of itself and the class of all others so similarly situated, respectfully requests judgment against Defendants as follows:

A.      That the Court certify this lawsuit as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be designated as class representative, that Plaintiff's counsel of record be appointed as Class counsel, and that the Court direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

B.      That the unlawful conduct, conspiracy, or combination alleged herein be adjudged

and decreed to violate Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1;

      C.    That Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, conspiracy, or combination alleged in the Complaint, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect under Section 16 of the Clayton Antitrust Act, 16 U.S.C. § 26;

      D.    That the Court award Plaintiff and the Class damages against Defendants for their violation of federal antitrust laws, in an amount to be trebled under § 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, plus interest;

      E.    That the Court award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees and expenses, including expert fees, as provided by law;

      F.    That the Court award Plaintiff and the Class pre- and post- judgment interest as provided by law and that such interest be awarded at the maximum rate allowable by law from and after the date of service of this Complaint; and

      G.    That the Court direct such other and further relief as the case may require and the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

June 2, 2023

                              */s/ James E. Cecchi*
                               James E. Cecchi

**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com


Roberta D. Liebenberg
Email: rliebenberg@finekaplan.com
Gerard A. Dever
Email: gdever@finekaplan.com
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA  19107
Tel: (215) 567-6565


Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Floor
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
cseeger@seegerweiss.com

Arthur N. Bailey
**RUPP PFALZGRAF, LLC**
111 West 2nd Street, Suite 1100
Jamestown, NY 14701
Telephone: (716) 664-2967
Email: bailey@RuppPfalzgraf.com

*Attorneys for Plaintiff Candle Shoppe of the*
*Poconos, Inc. and the Putative Class*